UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANGELIQUE VAZQUEZ,

                Plaintiff,

v.                                   No. 24-CV-3811 (KMK)

MONTEFIORE HEALTH SYSTEM INC.,        OPINION & ORDER
*and* MONTEFIORE MOUNT VERNON
HOSPITAL,

                Defendants.

---

Appearances:

William Brown, Esq.
Brown Kwon & Lam, LLP
New York, NY
*Counsel for Plaintiff*

Kevin K. Yam, Esq.
Rick Reyes, Esq.
William J. Anthony, Esq.
Littler Mendelson, P.C.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Angelique Vazquez ("Plaintiff") brings this Action against Defendants Montefiore Health System Inc. and Montefiore Mount Vernon Hospital (together, "Defendants") pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.* (*See generally* Compl. (Dkt. No. 1).)  Before the Court is the Parties' Consent Motion for Settlement Approval (the "Motion").  (*See* Consent Mot. for Settlement Approval) (Dkt. No. 35.)  For the following reasons, the Motion is denied without prejudice.

I.  Background

A.  Factual Background

As set forth in the Amended Complaint, Plaintiff was employed by Defendants from around September 29, 2019, until around November 24, 2022.  (First Am. Compl. ¶ 34 ("FAC") (Dkt. No. 10).)  At all relevant times, Plaintiff performed various clerical tasks, including, but not limited to, "assisting with payroll, entering schedules onto a spreadsheet, coordinating and organizing monthly medical board meetings, and assisting with credentialing doctors' privileges."  (*Id.* ¶ 35.)  Plaintiff alleges that during the time she was employed by Defendants, she regularly worked five days per week, ranging from 46.5 to 49 hour per week in total, and was paid a fixed weekly salary, regardless of actual hours worked.  (*Id.* ¶¶ 36, 40.)  Plaintiff further alleges that from the start of her employment to on or around January 28, 2022, her fixed weekly salary amounted to $1,057.70, which was increased to $1,125.00 per week on or around January 27, 2022.  (*Id.* ¶ 36.)  Plaintiff further alleges that Defendants misclassified her as an exempt employee because she was not paid above the salary basis threshold for exemptions and because her job duties were overseen and clerical in nature, that Defendants failed to pay her overtime premiums for working in excess of 40 hours per week, and that Defendants "knowingly and willfully operated their business with a policy of failing to pay overtime to Plaintiff."  (*Id.* ¶ 38, 39, 41, 44.)

Plaintiff asserts violations of the FLSA and NYLL based on these events.  Plaintiff seeks to recover unpaid overtime wages, liquidated damages, statutory damages, pre-judgment and post-judgment interest, attorneys' fees, and an injunction and a declaratory judgment against Defendants.  (*Id.* at 12.)

B. Procedural History

Plaintiff filed this Action on May 16, 2024. (*See generally* Compl. (Dkt. No. 1).) This lawsuit was initially filed as a putative collective action, but was never conditionally certified, nor did any opt-in plaintiff join the Action. (*See* Consent Mot. for Settlement Approval 1 (Dkt. No. 35).) Plaintiff filed an Amended Complaint on July 11, 2024. (*See* FAC.)[1] On August 20, 2024, Defendants filed a letter regarding their intent to file a motion to dismiss Plaintiff's Complaint. (*See* Dkt. No. 16.) After Plaintiff requested, and received, extensions of time to file a reply, (*see generally* Dkt. Nos. 18, 20, 22, 24, 26), the Parties filed a joint status report on October 7, 2024, informing the Court of potential settlement agreements, (*see generally* Dkt. No. 27). The Court ordered the parties to provide a proposed settlement agreement by October 22, 2024. (*See generally* Dkt. No. 28.) The Court granted three extensions of time to file the settlement agreement. (*See generally* Dkt. Nos. 30, 32, 34.) On November 27, 2024, the Parties submitted their settlement papers for the Court's approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (*See* Consent Mot. for Settlement Approval).

## II. Discussion

A. Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Second Circuit has held the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated

---

[1] Gary Ishkanian, Montefiore Mount Vernon Hospital's Medical Director, was named as a Defendant in the original Complaint, (*see* Dkt. No. 1), but was voluntarily dismissed without prejudice on July 12, 2024, (*see* Dkt. No. 11).

3

dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. Therefore, the Court must be satisfied the parties' agreement is "fair and reasonable." *Burgos v. JAJ Cont. Furniture Inc.*, No. 23-CV-3739, 2024 WL 3834147, at *2 (S.D.N.Y. Aug. 14, 2024) (quoting *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015)); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same).

In assessing the fairness of a settlement, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

Although the Court must consider the totality of circumstances, the most significant factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same).

Certain other factors weigh against finding the proposed settlement fair and reasonable, which include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA noncompliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (internal quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

This decision "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted). To this end, courts require information regarding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . ., the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

B.  Application

    1.  Settlement Fairness

The Court finds that the settlement sum is fair and reasonable. Under the Proposed Settlement Agreement, Defendants agree to pay Plaintiff a total sum of $10,000. (*See* Consent Mot. for Settlement Approval Ex. 1 ("Proposed Settlement Agreement" ¶ 1).) Defendants would

provide three checks, due within 14 calendar days of the Court's approval of this Agreement: one check to Plaintiff for $3,198.34 for alleged liquidated damages, for which Defendants will issue an IRS Form 1099-MISC, (*id.* ¶ 1.1); a second check to Plaintiff, for $3,198.33 for alleged back wages, for which Defendants will issue an IRS Form W-2, (*id.* ¶ 1.2); and a final check to Brown Kwon & Lam, LLP for $3,603.33, representing attorneys' fees and costs, for which Defendants will issue at IRS Form 1099-MISC, (*id.* ¶ 1.3.) Thus, Plaintiffs' net settlement—after the deduction of attorneys' fees and costs—is $6,396.67.

Plaintiff estimates her range of possible recovery is between $0 and $87,807.24. (Consent Mot. for Settlement Approval 2.) Assuming "all of the disputed facts alleged by Plaintiff are entirely correct," Plaintiff's calculation of damages amounts to $43,903.62 in unpaid wages. (*Id.*) A net recovery of $6,396.67 would therefore represent approximately 14.6% of Plaintiff's total alleged damages. (*Id.*)[2] In the absence of a settlement, Plaintiff points out that she would face significant litigation risk because Defendants vehemently dispute all of Plaintiff's allegations, and assert that they would set forth evidence to establish both that Plaintiff did not work over 40 hours per week during the course of her employment and that she met the administrative exemption under federal and state laws. (*Id.* at 3.) In addition, Plaintiff acknowledges that Defendants' successful argument that they acted in good faith at all times

---

[2] The Parties calculate the settlement as 22.8% of Plaintiff's best possible recovery. (Consent Mot. for Settlement Approval 2.) But the numerator in that calculation includes attorneys' fees and costs. (*See id.* at 1.) Here, the Court considers only the net payment to Plaintiff, as courts evaluate the fairness of a plaintiff's recovery after deducting attorney fees and costs. *See Pascual v. Three Diamond Diner Corp.*, No. 21-CV-3333, 2023 WL 1518513, at *3 n.3 (S.D.N.Y. Feb. 3, 2023); *Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2020 WL 5898956, at *3 (S.D.N.Y. Oct. 5, 2020); *Zorn-Hill v. A2B Taxi LLC*, No. 19-CV-1058, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020); *Garcia v. Cloister Apt Corp.*, No. 16-CV-5542, 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019).

would preclude her from collecting liquidated damages. (*Id.*) Due to the anticipated risks and costs associated with pursuing this matter through further litigation, discovery, motion practice, and trial, (*see id.*), settlement is an effective means of resolving the litigation for both sides. While this percentage recovery is a lower amount than typical FLSA settlement agreements, the Court finds that, given these risks, the settlement amount is reasonable. *See, e.g.*, *Zorn-Hill*, 2020 WL 5578357, at *4–5 (approving FLSA settlement amount of "slightly more than 10%" of the plaintiffs' total alleged damages because plaintiffs faced "major factual and legal litigation risks" and faced a lower best-case scenario amount); *Redzepagic v. Hammer*, No. 14-CV-9808, 2017 WL 1951865, at *1–2 (S.D.N.Y. May 8, 2017) (approving settlement sum representing approximately 15% of plaintiff's potential damages, not including liquidated damages, as reasonable when accounting for "litigation risks and potential defenses"); *see also Espinoza v. Westside Supermarket LLC*, No. 21-CV-8368, 2024 WL 2291760, at *1 (S.D.N.Y. May 20, 2024) (noting that a settlement amount for approximately 17% of Plaintiff's alleged damages was on the low side for a FLSA settlement, but approving that amount as reasonable due to the risks of litigation).

The Court is also satisfied that the Proposed Settlement Agreement was negotiated competently, in good faith, at arm's length, and that there is no evidence of fraud or collusion. (*See* Consent Motion for Settlement Approval 3 (noting that the settlement was reached between Plaintiff's and Defendants' counsel, who both have significant experience handling wage and hour claims after it was "negotiated at arm's length over the course of several weeks.").)[3]

---

[3] The first *Wolinsky* factor—i.e., the presence of similarly situated employees—was not briefed in the Proposed Settlement Agreement by the Parties, but does weigh in favor of approval. Given the protective purpose of the FLSA, "the presence of other employees situated similarly to the claimant" is a factor that weighs against approving a settlement. *Wolinsky*, 900

2.  Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) (requiring that "any release provision must be limited to the claims at issue in this action" to obtain court approval); *Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (rejecting proposed settlement releasing "any and all FLSA claims and NYLL claims of any kind or nature"). To that end, releases must generally be limited to wage and hour issues, *see Cheeks*, 796 F.3d at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181

---

F. Supp. 2d at 336. This lawsuit was initiated as a putative collective action, but no opt-in plaintiffs joined this action. (Consent Mot. for Settlement Approval 1.) A collective action was never conditionally certified, and a class action was not certified. (*Id.*) For these reasons, the Proposed Settlement Agreement is limited to Plaintiff's individual wage claims. (*Id.*) Due to the nonexistence of opt-in plaintiffs, the Court is not aware of the presence of any similarly situated plaintiff, and thus, this factor weighs in favor of approving the settlement. *See Montes v. Cnty. Comfort Home Sols., Inc.*, No. 23-CV-7579, 2024 WL 5004676, at *4 (S.D.N.Y. Dec. 6, 2024) (noting that courts have recognized no other employee coming forward and the plaintiff being the only employee affected by settlement and dismissal as "factors that support approval of the proposed settlement"); *Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that because the court was not "aware of other employees in the same position" as the plaintiff and because the plaintiff would "be the only employee affected by the settlement and dismissal" of the lawsuit, the weight was in favor of settlement); *Penafiel v. Rincon Ecuatoriano, Inc.*, 2015 WL 7736551, at *2 (noting that because "no other employee has come forward" and "only the named plaintiffs would be affected by dismissal," the proposed settlement agreement weighed in favor of approval).

8

(citation and quotation marks omitted).  Because of this standard, "a number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action."  *Larrea v. FPC Coffees Realty Co., Inc.*, No. 15-CV-1515, 2017 WL 1857246, at *3 (S.D.N.Y. May 5, 2017).  Broad releases are problematic in FLSA proposed settlement agreements, in part because "courts have a duty to police unequal bargaining power between employees and employers."  *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015).

   Here, the Proposed Settlement Agreement provides that "Plaintiff . . . agrees unconditionally to release and discharge the Defendants . . . from all causes of action arising under the Fair Labor Standards Act, the New York Labor Law, and/or any federal, state or local wage statute, code, or ordinance concerning wage and hour matters, from the beginning of time through the date of this Agreement."  (Proposed Settlement Agreement ¶ 4.)  The Proposed Settlement Agreement specifically notes that said release is limited only to "wage and hour claims that have arisen on, or prior to, the date this Agreement is executed and transmitted to counsel for Defendants . . . ." (*Id.*)  While the terms of this release "relate[ ] specifically to wage and hour issues without encompassing, for example, prospective discrimination claims," *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017), the terms are not "limited to conduct [that] arises out of the identical factual predicate as the settled conduct," *Rojas v. Bronx Moon LLC*, 2018 WL 4931540, at *3 (citing *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Khan v. Yonkers Auto Ctr., Inc.*, No. 19-CV-5581, 2022 WL 286659, at *4 (S.D.N.Y. July 21, 2022) (This . . . language expressly limits the release provision to the claims at issue in this Action, which is what is called for under the caselaw.");

*see also Montes v. Cnty. Comfort Home Sols., Inc.*, 2024 WL 5004676, at *5 (S.D.N.Y. Dec. 6, 2024) (same).

Instead, this release provision waives Defendants' liability for *any* causes of action relating to wage and hour issues outside of FLSA and NYLL, including "any federal, state or local wage statute, code, or ordinance . . . ." (*See* Proposed Settlement Agreement ¶ 4.) The caselaw is clear that a release provision must be limited to the claims at issue in the instant action. *See Lazaro-Garcia v. Sengupta Food Servs.*, 2015 WL 9162701, at *2; *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *cf. Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2022 WL 2129053, at *5 (S.D.N.Y. June 14, 2022) (approving a settlement agreement where the proposed release provision applied only to "any and all claims arising under the FLSA, the NYLL, and the Wage Theft Prevention Act . . . limited solely and only to wage and hour claims . . . ."). Because this provision releases potential claims that do not arise out of the identical factual predicate of the instant action—that is, for wage and hour claims under any federal, state or local wage statute, code, or ordinance—it is too broad for approval.

4.  Non-Disparagement Clause

The Proposed Settlement Agreement contains a mutual non-disparagement clause wherein Plaintiff "agrees that she will not make, or cause to be made, any critical, derogatory,

disparaging, defamatory or untruthful statements, about Releasees, whether by electronic, written or oral means, to any of the Company's past, present, or future employees, business associates, or any other person or entity (including, but not limited to, the press, or other media)." (Proposed Settlement Agreement ¶ 7.)  However, the clause also contains a carve-out provision: "This paragraph is not intended to prohibit the Parties from making truthful statements about their experiences litigating this case." (*Id.*)  Non-disparagement clauses are generally permissible, so long as they contain such a carve-out.  *See Chandler v. Total Relocation Servs., LLC*, No. 15-CV-6791, 2017 WL 3311229, at *4 (S.D.N.Y. Aug. 2, 2017); *Nights of Cabiria*, 96 F. Supp. 3d at 180 n.65.  Thus, the Court approves the non-disparagement clause.

    5.  <u>Attorneys' Fees</u>

Under the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorneys' fees.  *See Pauscal v. Three Diamond Diner Corp.*, 2023 WL 1518513, at *5; *Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)).  Although courts may elect to award fees by considering either the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records.").  A proper fee request thus includes

11

"contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181. The Court must also determine the reasonableness of the hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

In this case, Plaintiff's counsel seeks $405.00 in costs and a fee award of $3,198.33, (Consent Mot. for Settlement Approval 4), which amounts to a fee award of approximately 33.3% of the total settlement amount. The Court finds this to be a reasonable award, as courts in the Second Circuit routinely award attorney fees in FLSA settlements of as much as one-third of the total recovery. *See Zorn-Hill*, 2020 WL 5578357, at *6 (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13- CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the attorneys' fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *report and recommendation adopted by* 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).

Plaintiff's counsel has also provided substantial documentation of contemporaneous time records, (*see* Consent Mot. for Settlement Approval Ex. 3, at 1), which supports that this is a proper fee request, *see Nights of Cabiria*, 96 F. Supp. 3d at 181 (noting that a proper fee request in the Second Circuit requires contemporaneous billing records for each attorney including the date, hours expended, and nature of the work done).

III.  Conclusion

For the reasons set forth above, the Parties' Motion is denied without prejudice.  The Parties may reapply for approval of a settlement that complies with this order.

SO ORDERED.

Dated:   May 5, 2025
            White Plains, New York

_____
KENNETH M. KARAS
United States District Judge